# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

JACK ELWOOD WILLEY, JR., )
      Plaintiff, )
  )
v. )   CIVIL ACTION NO. 5:13-03260
  )
CAROLYN W. COLVIN, )
**Acting Commissioner of Social Security,** )
      Defendant. )

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered February 22, 2013 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 10 and 13.) and Plaintiff's Reply. (Document No. 14.)

The Plaintiff, Jack Elwood Willey, Jr. (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on June 16, 2010 (protective filing date), alleging disability as of June 1, 2010, due to "back problems."[1] (Tr. at 15, 136-39, 140-45, 161, 175.) The claims were denied initially and upon reconsideration. (Tr. at 57-59, 68-70, 71-73.) On January 13, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 74-75.) A hearing was held on August 16, 2011, before the Honorable Joseph T. Scruton. (Tr. at 24-52.) By decision dated September 21, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-23.) The ALJ's decision became the

---

[1] On his form Disability Report - Appeal, Claimant alleged nerve damage of the right elbow and wrist, a knot on the right shoulder, chronic back pain, and breathing problems, as additional disabling impairments. (Tr. at 200.)

final decision of the Commissioner on January 11, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on February 22, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education,

work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, June 1, 2010. (Tr. at 17, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "hypertension; chronic obstructive pulmonary disease; obesity; status post lumbar laminectomy; and lumbar spine degenerative dis[c] disease," which were severe impairments. (Tr. at 17, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work as follows:

> [T]he [C]laimant is able to lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 or more hours in an 8-hour workday and sit for 6 or more hours total in an 8-hour workday. Additionally, the [C]laimant can occasionally stoop and crouch but rarely climb or kneel. Finally, the [C]laimant should never crawl and should avoid concentrated exposure to pulmonary irritants.

(Tr. at 18, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 21, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a counter clerk, rental clerk, and an usher, at the light level of exertion. (Tr. at 22-23, Finding No. 10.) On this basis, benefits were denied. (Tr. at 22-23, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

3

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 24, 1961, and was 50 years old at the time of the administrative hearing, August 16, 2011. (Tr. at 21, 29, 136, 140.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 21, 29, 160, 161-62.) In the past, he worked as a construction foreman. (Tr. at 21, 29-30, 43-44, 162-63, 167.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and summarizes it herein in relation to Claimant's arguments.

*Dr. John Schmidt III, M.D. - Medical Notes*:

Claimant was referred to Dr. Schmidt by Dr. S. Kent James, D.O., for evaluation of a several year history of low back pain, some left leg pain to the foot that had worsened recently, and some occasional right hip pain with numbness. (Tr. at 232-34.) Claimant had a motorcycle accident when he was 12 years old that required some surgeries in the left leg, but had not had any difficulties as a result of that until the last few years. (Id.) Claimant rated the pain anywhere from one to ten out of ten,

4

described the pain as sharp and aching, and stated that the pain was worse when up and walking and better if sitting down. (Id.)

On physical exam, Dr. Schmidt observed that Claimant was alert and oriented, ambulated with a nonantalgic gait, had tenderness to palpation diffusely in the lumbar spine, had intact sensation over the spine and lower extremities, had normal strength and range of motion of the lower extremities, and had equal and intact reflexes. (Tr. at 233.) Range of back motion produced back pain. (Id.) Straight leg raising testing on the left produced pain and testing on the right was negative. (Id.) Dr. Schmidt noted that the October 15, 2009, lumbar spine MRI (Tr. at 279.) revealed degenerative disc disease at L3-4 and L4-5, with endplate changes and a moderate degree of stenosis at L3-4 and L4-5, worse at L3-4 and worse on the left than right due to disc bulging. (Tr. at 233.) He assessed low back pain with L3-4, L4-5 degenerative disc disease and left greater than right buttock and leg pain with L3-5 stenosis. (Id.) Dr. Schmidt recommended and Claimant agreed to lumbar laminectomy for lateral herniated disc at L3-4 and L4-5 left. (Tr. at 233-34.)

Dr. Schmidt performed the lumbar laminectomy on January 12, 2010. (Tr. at 227-31, 294-97.) Dr. Schmidt examined Claimant on January 27, 2010, two-weeks status post lumbar laminotomy and noted that he was doing quite well and had "excellent relief of his severe preoperative his and leg pain." (Tr. at 225.) On exam, Claimant had numbness in the top and side of his right thigh, negative straight leg raising testing, normal muscle strength in the lower extremities, intact sensation, and normal gait and station. (Id.)

*Dr. S. Kent Jameson, D.O. - Medical Notes*:

On April 16, 2010, Claimant reported to Dr. Jameson that he had no complaints and that his back was ninety-five percent better despite some pain with prolonged activity. (Tr. at 242.)

5

*Dr. Mustafa Rahim, M.D. - Consultative Examination*:

On September 3, 2010, Dr. Rahim conducted a consultative examination at the state agency's request. (Tr. at 256-59.) Claimant reported a ten year history of back pain and pain radiation to the buttocks and lower extremities. (Tr. at 256.) The MRI scan in October 2009, revealed large disc herniation at L3-L4 and L4-L5 with extensive degenerative joint disease for which he underwent surgery in January. (Id.) Claimant reported significant improvement following surgery with a little bit of continued problems. (Id.) Claimant also reported COPD, dyspepsia, anxiety, and depression. (Id.) Dr. .Rahim noted that Claimant walked into his office without any assistive device. (Id.) Examination of the lumbosacral spine revealed positive straight leg raising testing at 40 degrees on the right and 50 degrees on the left on the second attempt. (Tr. at 258.) Claimant refused to squat due to pain, but was able to stand on his heels and toes with a little difficulty. (Id.) The lumbar spinal flexion was almost complete. (Id.) Dr. Rahim assessed lumbar radiculopathy status post surgery, accelerated hypertension, obesity, history suggestive of chronic obstructive pulmonary disease, tobacco and alcohol abuse, and a family history of diabetes mellitus. (Tr. at 258.)

*Dr. Marcel Lambrechts, M.D. - Physical RFC Assessment*:

On September 10, 2010, Dr. Lambrechts, a reviewing state agency medical consultant, completed a form Physical RFC Assessment on which he opined that Claimant was capable of performing light exertional level work, with occasional postural limitations but never climbing ladders, ropes, or scaffolds. (Tr. at 260-67.) He further opined that Claimant should avoid concentrated exposure to extreme cold and hazards and even moderate exposure to vibration. (Tr. at 264.) Dr. Lambrechts noted Claimant's activities to have included caring for his dogs, managing his personal care, fixing easy meals, mowing with a riding mower with rest stops, going outside daily, and shopping and managing money. (Tr. at 265.) He also noted that Claimant went on social activities with his family and friends, got along with authority, and handled stress and changes in routine very well. (Id.) Dr. Lambrechts

opined that Claimant's symptoms were magnified. (Id.) He noted that Claimant experienced back pain with some minor decrease in range of motion but that he had improved since surgery. (Id.) He also noted that Claimant's blood pressure was not well controlled. (Id.) In reaching his opinion, Dr. Lambrechts reviewed Dr. Rahim's consultative evaluation report; Dr. Schmidt's January 27, 2010, post-operative follow-up notes; and the reports from Physicians Quick Care dated October 15, 2009, and April 16, 2010. (Tr. at 267.)

*Dr. Rabah Boukhemis, M.D. - Case Analysis*:

On November 22, 2010, Dr. Boukhemis affirmed Dr. Lambrechts' RFC Assessment as written. (Tr. at 268.)

*Z. Shamma-Othman, M.D. - Greenbrier Physicians - Medical Notes*:

Pulmonary function testing on November 24, 2010, revealed normal lung volumes and diffusion capacity, and therefore, Claimant was diagnosed with shortness of breath. (Tr. at 298.) On January 4, 2011, Claimant was examined primarily for breathing problems, but he also complained of increased back pains since his surgery. (Tr. at 269-74.) Claimant reported that he had an appointment scheduled to see a neurologist, Dr. Roberts, regarding his back pain. (Tr. at 269.) Physical exam revealed rales and rhonchi in the lungs, along with scattered wheeze and decreased breath sounds. (Tr. at 270.) He had back pain and decreased movements. (Id.) Dr. Othman assessed chronic bronchitis, back pain, chronic airway obstruction ("COPD"), and tobacco abuse. (Tr. at 270-71.) He gave Claimant samples of Spiriva and requested that he follow-up in one month. (Tr. at 271.)

*Dr. David Roberts, M.D. - Neurological Consultation*:

On May 10, 2011, Claimant was referred to Dr. Roberts by Physician's Assistant Sarah England for a neurological consultation regarding his history of back, hip, and leg pain. (Tr. at 307-26.) Claimant reported that he did well for the first three months after surgery but worsened thereafter. (Tr. at 324-26.) Dr. Roberts noted that Claimant was not to the pre-surgery level, but that Claimant had a lot of neck

pain and was unable to work. (Tr. at 324.) Claimant rated the pain between levels three and nine out of ten in intensity and described the pain as aching, burning, dull, numb, sharp, and tingling. (Id.) He reported difficulty falling or staying asleep, numbness, tingling, generalized leg weakness, difficulty walking associated with back pain, hip and leg pain, hypertension, breathing problems, and weight gain. (Tr. at 325.) Dr. Roberts diagnosed low back pain associated with severe degenerative changes and a history of L3-4 and L4-5 unknown surgical repair of degenerative changes and hypertension. (Tr. at 326.) He ordered a repeat MRI and recommended joint injections. (Id.)

On February 15, 2011, Dr. Roberts reviewed the February 2, 2011, MRI lumbar results and compared them himself to the October 15, 2009, MRI and determined that the L3-4 level is worse than the L4-5 level and was then eccentric to the other side. (Tr. at 319.) Physical examination was normal with the exception of tenderness over the lumbosacral region and spasms. (Tr. at 321-22.) Straight leg raising test was negative. (Tr. at 321.) Dr. Roberts assessed low back pain with severe degenerative changes and L3-4 and L4-5 disc herniations. (Tr. at 322.) He concluded that based on his examination and by history, Claimant's low back pain appeared more mechanical than neurological. (Id.) Dr. Roberts recommended injections, which were administered in April and May, 2011. (Tr. at 311, 312, 318, 322.)

Claimant reported on April 19, 2011, that he had two days of significant pain following the injection that was replaced by "feeling pretty good" for a few days thereafter. (Tr. at 313.) He returned to the pre-injection state a week or so later. (Id.) On May 10, 2011, following his third set of injections, Claimant returned to Dr. Roberts and was unable to rate any definite improvement in his pain. (Tr. at 307.) He stated that on some days he felt better than others but other days he questioned any improvement. (Id.) On exam, Dr. Roberts noted negative bilateral straight leg raising test, tenderness to palpation and muscle spasms of the lumbar spine, normal muscle strength and sensation, and a normal gait. (Tr. at 309-10.) He recommended physical therapy for eight weeks. (Tr. at 310.)

*Greenbrier Valley Physical Therapy*:

Claimant underwent physical therapy from June 14, 2011, through July 7, 2011. (Tr. at 327-32.) Claimant reported on his second session that he was sore, but the therapist noted that was to have been expected. (Tr. at 328.) On June 21, 2011, Claimant rated his pain at a level two out of ten and reported that he was only mildly sore with traction. (Id.) On June 23, 2011, Claimant reported soreness which may have been due to his cutting trees and limbs in his yard from the storm. (Id.) Claimant reported that he felt that traction was doing "the most good," and his time on the bicycle was increased. (Id.) On July 5, 2011, Claimant reported pain at a level three out of ten and reported right-sided low back pain. (Tr. at 327.) He stated that he had little difficulty while on vacation in South Carolina the week prior and that he had to take pain medications only on a few days. (Id.) On July 7, 2011, Claimant reported soreness in his lower back and rated the pain at a level six or seven out of ten. (Id.) He reported increased lower extremity pain due to having walked a long period of time in WalMart. (Id.)

*Dr. Roberts - Medical Assessment of Ability to Do Work-Related Activities (Physical)*:

Dr. Roberts completed a form Medical Assessment of Ability to Do Work-Related Activities (Physical) on August 11, 2011, on which he opined that Claimant was capable of standing and walking for 15 minutes in an eight-hour workday for one or two minutes without interruption. (Tr. at 334.) He further opined that Claimant could sit for 30 minutes in an eight-hour workday and never perform any postural activities with the exception of occasional balancing. (Tr. at 334-35.) He also opined that Claimant should avoid heights, temperature extremes, noise, fumes, and vibrations. (Tr. at 335.) Dr. Roberts opined that Claimant could lift two pounds maximum on an occasional basis and ten pounds maximum on a frequent basis. (Tr. at 334.) Regarding manipulative limitations, he opined that Claimant was limited in his ability to reach in all directions and in handling, and should never perform these functions. (Tr. at 336.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that remand is warranted upon the additional medical records from his treating neurologist, Dr. Roberts, that were submitted to the Appeals Council. (Document No. 10 at 5-7.) Claimant asserts that the new evidence is relevant as it is a RFC evaluation from his treating neurologist completed during the relevant time period. (Id. at 5.) He asserts that the new evidence is neither cumulative nor duplicative as the opinion specifically sets forth the physician's opinion as to Claimant's ability to perform various functional tasks as opposed to summarizing the office notes that were already part of the record. (Id.) Claimant further asserts that the evidence is material because Dr. Roberts' limitations are so preclusive that the ALJ may have concluded that Claimant was disabled. (Id. at 6.) Finally, as good cause for failing to submit the opinion prior to the ALJ's decision, Claimant asserts that counsel did not receive the opinion until August 16, 2011, several days after the administrative hearing and after the hearing record was closed. (Id.) Claimant asserts therefore, that the evidence was not available for the ALJ's consideration prior to making his decision, but was submitted to the Appeals Council. (Id.)

In response, the Commissioner asserts that Dr. Roberts' opinion is not material because it is not well supported by objective evidence and is inconsistent with the substantial evidence of record, including his own objective medical findings. (Document No. 13 at 8-9.) The Commissioner asserts that Dr. Roberts found upon examination that Claimant had normal muscle strength, tone, and bulk; normal heel, toe, and tandem walking; normal sensation; and negative straight leg-raising testing. (Id. at 9.) Thus, his medical records did not support his opinion. (Id.) Furthermore, his opinion itself was inconsistent as he opined that Claimant could occasionally lift no more than two pounds, but could frequently lift up to ten pounds. (Id.) The Commissioner further asserts that Dr. Roberts' opinion is inconsistent with the opinions of Drs. Lambrechts and Boukhemis who opined that Claimant was

10

capable of performing light work. (Id.) Finally, the Commissioner asserts that Dr. Roberts' opinion is inconsistent with Claimant's reported activities that included caring for his dogs, performing yard work, and shopping. (Id.) In view of these inconsistencies, the Commissioner asserts that the evidence is neither new nor material and that remand is not warranted based on the new evidence. (Id.)

Claimant also asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that he did not meet or equal the requirements of Listing 1.04A or the subsidiary requirements, "B" and "C." (Document No. 10 at 7-10.) Claimant notes the MRI results in October 2009, and February 2011, that show disc herniations and narrowing with bulging. (Id. at 9.) He asserts that Dr. Rahim noted in September 2010, that he had positive straight leg raising testing at 40 degrees on the right and 50 degrees on the left. (Id. at 10.) He further notes his testimony as to constant low back pain with radiation and numbness and lack of strength and the use of a cane to help him get around. (Id. at 11.) In view of the foregoing, Claimant asserts that the ALJ failed to compare all of Claimant's findings to all of the subsidiary sections of Listing 1.04. (Id.)

In response, the Commissioner asserts that Claimant did not meet all the listed criteria of 1.04A. (Document No. 13 at 10-11.) The Commissioner asserts that all the medical sources of record found that Claimant had intact sensation, reflexes, and full motor strength, and therefore, he cannot satisfy Listing 1.04A. (Id. at 10.) Additionally, the Commissioner asserts that Dr. Roberts failed to find any limitation of spinal motion or negative straight leg raising testing. (Id.) Dr. Roberts also concluded that the etiology of Claimant's pain was not neurological in nature. (Id.) Though Claimant mentions the subsidiary requirements of "B" and "C" of Listing 1.04, the Commissioner asserts that Claimant failed to make any argument or offer any evidence that he met either requirement. (Id. at 11.) Accordingly, the Commissioner asserts that substantial evidence supports the ALJ's finding that Claimant did not meet Listing 1.04. (Id.) In Reply, Claimant asserts that the Commissioner has supplied post hoc

rationale that does not serve as a substitute for the lack of a rationale in the ALJ's decision. (Document No. 14 at 2-3.) He asserts that the ALJ failed to compare all the medical evidence to every part of the relevant Listing and therefore, committed reversible error. (Id. at 3.)

Finally, Claimant asserts that the ALJ's decision is not supported by substantial evidence because the ALJ erred in finding that he could perform the physical demands of light work. (Document No. 10 at 10-11.) Claimant asserts that based on his medical impairments and the new evidence from Dr. Roberts that limits him to lifting only ten pounds frequently, he is unable to meet the requirements of light work and is limited to sedentary work. (Id. at 11.) Pursuant to Medical-Vocational Rule § 201.10, a finding of disabled would be warranted. (Id.)

In response, the Commissioner asserts that the ALJ accommodated Claimant's lumbar spine impairment by limiting him to light work with postural limitations and that Claimant failed to present any evidence to support greater limitations than accounted for by the ALJ. (Document No. 13 at 11-12.) The Commissioner asserts that Claimant reported significant improvement in his back following surgery and that his treatment was infrequent, conservative, routine, and unremarkable in nature thereafter. (Id. at 11.) Drs. Lambrechts and Boukhemis opined that Claimant was capable of performing light level work as assessed by the ALJ. (Id.) Claimant's activities also support light exertional level work. (Id. at 12.) Accordingly, the Commissioner asserts that the ALJ's RFC assessment of light work is supported by substantial evidence of record and that Claimant's argument is without merit. (Id.)

Analysis.

1. New Evidence - Request for Remand.

In considering Claimant's argument for remand, the Court notes initially that the social security regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without

remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[2] In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the Commissioner if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court

---

[2] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence. This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this District:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g). The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled. Further, the Supreme Court of the United States has not suggested that *Borders*' construction of § 405(g) is incorrect. Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W.Va. 1992) (citations omitted).

"at least a general showing of the nature" of the newly discovered evidence. Id.

With regard to the new evidence submitted, the Claimant has not satisfied all four factors of Borders, and therefore, remand on the basis of new evidence is inappropriate. Claimant submitted to the Appeals Council a physical RFC assessment by his treating neurologist, Dr. Roberts, dated August 11, 2011. (Tr. at 334-37.)

Under the Borders analysis, the undersigned first finds that the evidence is relevant to the determination at the time the application was filed, as the opinion was dated August 11, 2011, and fell within the relevant time period June 1, 2010, through September 21, 2011.

Under the second step of the Borders analysis, the undersigned finds that the evidence is not material because the opinion is internally inconsistent and is inconsistent with Dr. Roberts' treatment notes and the other substantial evidence of record. The opinion is internally inconsistent in that Dr. Roberts opined that Claimant could lift occasionally no more than two pounds but could lift frequently up to ten pounds. (Tr. at 334.) The opinion is inconsistent with Dr. Roberts' treatment notes in that on his several examinations, Dr. Roberts consistently noted essentially normal physical exams, with normal muscle strength, sensation, and reflexes; negative straight leg raising tests; a normal gait and an ability to heel, toe, and tandem walk. (Tr. at 307-26.) These benign findings contradict his restrictive physical limitations as assessed on August 11, 2011. Dr. Roberts' opinion also conflicts with and is inconsistent with the opinions of Drs. Lambrechts and Boukhemis who opined that Claimant was capable of performing light work. (Tr. at 260-67, 268.) Furthermore, Claimant reported that he was able to fix easy meals, perform yard work with breaks, manage his personal care, shop, watch television, surf the internet, drive short distances, and go on vacation. (Tr. at 35-36, 265.) These activities are inconsistent with Dr. Roberts' assessed restrictions. Claimant does not therefore, meet the second step of the Borders analysis.

Claimant appears to meet the third step in the Borders analysis. The undersigned finds that there was good cause for Claimant's failure to submit Dr. Roberts' opinion prior to the close of the record at the administrative level. Citing Brock v. Secretary of Health & Human Serv., 807 F.Supp. 1248, 1251 (S.D. W.Va. 1992), Claimant asserts that he received Dr. Roberts' August 11, 2011, opinion several days after the administrative hearing on August 16, 2011, and after the hearing record was closed.

Finally, Borders requires that the Claimant present at least a general showing of the new evidence to the Court. Claimant submitted Dr. Roberts' opinion to the Appeals Council and the exhibit has been made a part of the administrative record which is available for the Court's review.

The Claimant has failed to satisfy all four factors of Borders and, therefore, remand would be inappropriate; the physical RFC assessment submitted to the Appeals Council and to the Court is not material and therefore, fails to provide a basis for changing the ALJ's decision. The undersigned finds that remand is not warranted in this matter and that the Commissioner's decision is supported by substantial evidence.

2. Medical Listing 1.04A.

Claimant asserts that the ALJ erred in failing to find that Claimant's impairments did not meet or equal the requirements of Listing 1.04. (Document No. 10 at 7-10.) The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity," regardless of age, education or work experience, see Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990); 20 C.F.R § 416.925(a) (2011). Section 1.04 of the Listing of Impairments provides criteria for determining whether an individual is disabled by disorders of the spine. Such spinal disorders include, but are not limited to, a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebra. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (2011). The required level of severity for Listing 1.04 is satisfied when the claimant has a disorder of the spine resulting in

compromise of a nerve or the spinal cord with any one of the three following requirements:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dyesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> OR
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The ALJ concluded that Claimant's back impairment failed to meet or equal the listing level requirements of 1.04. (Tr. at 18.) Contrary to Claimant's argument, the ALJ considered his impairment under all three subsidiary requirements of Listing 1.04. Regarding Listing 1.04A, the ALJ concluded that there was no evidence of nerve root compression. (Tr. at 18.) Therefore, the ALJ was not required to consider further the criteria under Listing 1.04A. As the Commissioner points out, had the ALJ considered the criteria further, he would have concluded that the evidence demonstrated that intact sensation and reflexes on all examinations. Claimant therefore, would not have met Listing 1.04A for this additional reason. Regarding Listing 1.04B, the ALJ concluded that there was no evidence of spinal arachnoiditis. (Tr. at 18.) Claimant was never diagnosed with such condition and the imaging reports failed to reveal any such diagnosis. Finally, regarding Listing 1.04C, the ALJ concluded that the evidence failed to establish that Claimant had an inability to ambulate effectively as defined under

Listing 1.00B2b.[3] (Id.) The evidence established that although Claimant may have used a non-prescribed cane to help him ambulate, he retained one free hand and maintained a normal gait per Dr. Roberts' medical notes. Claimant has not alleged evidence to the contrary. Moreover, the ALJ concluded that the record contained no evidence of lumbar spinal stenosis that resulted in pseudoclaudication. The undersigned finds that the ALJ properly considered Claimant's back impairment under all the requirements of Listing 1.04, and that the ALJ's decision that Claimant did not have an impairment to meet or equal Listing 1.04 is supported by the substantial evidence of record.

3. Light Work.

Finally, Claimant asserts that given his medical impairments and Dr. Roberts' opinion dated August 11, 2011, he is unable to meet the requirements of light work and is limited to sedentary work. (Document No. 10 at 11.) He further asserts that a finding of disability is directed by Medical-Vocational Rule § 201.10. (Id.) As discussed above, the Commissioner properly rejected Dr. Roberts' opinion and accommodated Claimant's back impairment by limiting him to light work with additional postural limitations. (Tr. at 18.) The ALJ's RFC assessment is supported the state agency consultants' opinions and the substantial evidence of record, which revealed that Claimant's condition improved after his surgery. Following surgery in January 2010, Claimant did not receive any specialized treatment

---

[3] An inability to ambulate effectively is defined under the Regulations as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(1) (2011). It further is defined as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. The Regulations also define effective ambulation as follows:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2) (2011).

until he saw Dr. Roberts in January 2011. (Tr. at 19.) Even then his treatment consisted of three rounds of epidural injections, physical therapy, and medications consisting of Flexeril and Tramadol. (Tr. at 19-20.) During the course of physical therapy, Claimant showed improvement and was able to cut up tree limbs that fell in his yard from a storm and had little difficulty while on vacation. (Tr. at 20.) Though Claimant alleged that he experienced a popping sensation during a physical therapy session and that his pain worsened, the ALJ noted that the medical record failed to document this event. (Tr. at 19, 21.) Nevertheless, the ALJ found that the incident was too recent an event to have been considered a permanent injury. (Tr. at 21.) Furthermore, the ALJ noted that although Claimant utilized a cane to assist in walking, it was not prescribed by a medical provider. (Id.) Finally, as noted above, Dr. Roberts failed to note any significant findings or limitations on physical examinations. (Tr. at 19-20.) The ALJ noted that the record failed to reveal any restrictions recommended by any of Claimant's treating physicians. (Tr. at 20.) The ALJ therefore, concluded that the surgery "was generally successful in relieving much of the [Claimant's] symptoms" and limited Claimant to performing light level work. (Tr. at 18-21.) In view of the foregoing, the undersigned finds that the ALJ's RFC assessment is supported by the substantial evidence of record.[4]

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the

---

[4] As Claimant properly was limited to light level work, Medical-Vocational Rule § 201.10 is inapplicable. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.10 (2011).

provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Berger, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 21, 2014.

R. Clarke VanDervort
United States Magistrate Judge